**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>　　　　Plaintiff,<br><br>Laura M. Napoli,<br><br>　　　　Intervenor/Plaintiff,<br><br>vs.<br><br>Walgreen Co., d/b/a Walgreen Arizona Drug Co.,<br><br>　　　　Defendant. | No. CIV-05-1400-PCT-FJM<br><br>**ORDER** |

I.

The Court has before it defendant Walgreen Co.'s ("defendant") motion for summary judgment (doc. 87), and its statement of facts and exhibits (docs. 88-90); plaintiff's response (doc. 91) and statement of facts (doc. 92); and defendant's reply (doc. 95).

Defendant has employed Intervenor Laura Napoli ("Napoli") since 1983, when Napoli was hired as a warehouse employee in defendant's Flagstaff distribution center. Although initially assigned to the janitorial department, Napoli was quickly transferred to a position in the administrative office, where she remained until October 2002.

On August 31, 2001, defendant advertised an opening for a function manager position by way of informational posting in its Flagstaff distribution center. In response to that posting, Napoli submitted an application for function manager. However, she did not proceed beyond the first round of screening. In February 2002, one of defendant's male employees, who also submitted an application for function manager in response to the August 31, 2001 posting, was promoted to the position. On March 22, 2002, defendant posted another function manager position opening. Napoli again applied, but did not score high enough in the second round of the interview process to qualify for the open position. In July 2002, a male applicant who received a second round score higher than Napoli's was promoted to a function manager position. On October 17, 2002, Napoli was promoted to function manager. Plaintiff contends that defendant's failure to consider Napoli for promotion to a function manager position on two separate occasions in 2002 violates Title VII, and entitles Napoli to punitive damages. See Complaint (doc. 1) at 1, 5.[1] Napoli's complaint alleges an Equal Pay Act claim based on the compensation she has received as a function manager. See Intervernor's Proposed Complaint, Motion to Intervene as Plaintiff Exhibit 1 (doc. 9) at 8. Defendant moves for summary judgment as to all claims in both complaints. For the reasons stated below, we grant defendant's motion in its entirety.[2]

---

[1] Plaintiff's response clarifies that defendant's failure to promote Napoli to function manager in February 2002 and July 2002 are the employment decisions that give rise to its Title VII claims. See Response at 10, 13.

[2] Defendants also moved for summary judgment on Napoli's unjust enrichment claim. That issue was mooted by our December 14, 2006 Order (doc. 94), in which we dismissed the unjust enrichment claim with prejudice. Defendant also moved for summary judgment on "any discrete incidents of discrimination that occurred before October 9, 2001" that may give rise to Title VII claims, arguing that any claims based on those incidents are time-barred because Napoli did not file a Charge of Discrimination with the EEOC until August 5, 2002. See Motion for Summary Judgment at 9. We deem plaintiff's failure to respond to this argument a consent to the granting of summary judgment on this ground, see LRCiv 7.2(i), and address only those Title VII claims based on employment decisions made after October 9, 2001.

II.

On a motion for summary judgment under Rule 56, Fed. R. Civ. P., the moving party carries the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). When the moving party satisfies this initial burden, the burden then shifts to the nonmoving party to establish that a genuine issue of material fact exists. Id. 477 U.S. at 324, 106 S. Ct. at 2553-54.

A.

To establish a prima facie case of Title VII disparate treatment based on sex, a plaintiff must establish that she (1) "belongs to a protected class," (2) "was qualified for the position," (3) "was subject to an adverse employment action," and (4) similarly situated individuals outside her protected class were treated more favorably. Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123 (9th Cir. 2000). If the plaintiff establishes its prima facie case, the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the challenged action." Id. at 1123-24.

If defendant succeeds in this regard, in order to survive summary judgment, plaintiff must demonstrate that an employer's proffered reason "was not the true reason for the employment decision," either directly, "by persuading the court that a discriminatory reason more likely motivated the employer," or indirectly, "by showing that the employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981).[3] However, mere allegations that a nondiscriminatory justification is unworthy of credence will not allow a plaintiff to avoid summary judgment.

---

[3] In 1998, the Ninth Circuit held that when direct evidence is unavailable, circumstantial evidence of pretext must be "specific" and "substantial" in order for a plaintiff to "create a triable issue with respect to whether the employer intended to discriminate on the basis of sex." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998). However, a more recent case clarifies that in light of Desert Palace, Inc. v. Costa, 539 U.S. 90, 100, 123 S. Ct. 2148, 2154 (2003), "in the context of summary judgment, Title VII does not require a disparate treatment plaintiff relying on circumstantial evidence to produce more, or better, evidence than a plaintiff who relies on direct evidence." Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1030 (9th Cir. 2006).

- 3 -

Rather, a plaintiff must offer evidence from which a reasonable jury could conclude that an employee was denied a promotion because of her sex. Cornwell, 439 F.3d at 1031.

A plaintiff may not argue that an employer's proffered nondiscriminatory reasons are pretextual by suggesting that employment practices might be restructured under an alternative design in order to "maximize the number of minorities and women hired." Tex. Dep't of Cmty. Affairs, 450 U.S. at 259, 101 S. Ct. at 1096-97. Title VII requires nondiscriminatory employment decisions, but does not " ' diminish traditional management prerogatives.' " Id. (citation omitted).

1.

Defendant first moves for summary judgment on plaintiff's Title VII sex discrimination claim based on its failure to promote Napoli to the position of function manager in February 2002. See Motion for Summary Judgment at 10. Defendant does not move for summary judgment on plaintiff's prima facie case, but instead contends that it did not promote Napoli because her telephone prescreen interview score automatically disqualified her from the function manager selection process. Id. at 10-11. Plaintiff does not move for summary judgment on its prima facie case.[4] Rather, it argues that defendant's decision to not select Napoli for this particular promotion was pretextual because it "could be disbelieved by the trier-of-fact." Response at 10.

In particular, Napoli challenges the process through which defendant filled a February 2002 Function Manager opening. Response at 10. The process involved several steps. First, the position was advertised by way of an informational posting on August 31, 2001; second,

---

[4] Plaintiff instead concludes that "[a]s set forth in the Plaintiffs' Statement of Facts, Plaintiffs have established a prima facie case of sex discrimination under Title VII: Napoli is a member of a protected class; she was qualified for the position of function manager; she was denied promotions to the position in February and July of 2002; and similarly situated individuals outside of her protected class . . . were given the positions instead." Response at 9. Any decision regarding plaintiff's prima facie case would not change our ultimate conclusion. Plaintiff has not rebutted defendant's proffered nondiscriminatory reasons for the employment decisions that give rise to the Title VII claims, and therefore its claims do not survive summary judgment.

- 4 -

those interested in the position sent resumes and letters of interest to defendant's employees responsible for recruitment; third, a recruiter conducted a telephone prescreen interview of the applicants who submitted resumes and letters, using a prepared script; fourth, those who received passing scores on the telephone prescreen interview proceeded to an in-person interview; and fifth, the Distribution Center Manager offered the candidate who was most highly rated in the in-person interview the open position. See Motion for Summary Judgment at 4 (citing Deposition of Will Duncan, Walgreens' 30(b)(6) Designee, Defendant Walgreens' Statement of Facts Exhibit 28 at 10:17-11:13).

Responses to a single function manager opening, advertised by way of an informational posting, may identify more than one candidate suitable for promotion to a function manager position. If a function manager position opens up soon after one has been filled, defendant may fill the new opening with candidates already deemed suitable, but not yet promoted, within six months of the prior posting. See Reply at 4 (citing September 27, 2006 Deposition of Will Duncan, Defendant Walgreens' Statement of Facts Exhibit 2 at 38-39). This practice avoids the need to advertise by way of an informational posting, a procedure that initiates a time-consuming process of reviewing numerous applicants--some qualified, some unqualified. Id.

The August 31, 2001 posting advertised one opening, but identified three candidates who eventually filled function manager positions. See Reply at 4 (citing Deposition of Jeff Dingwell, Defendant Walgreens' Statement of Facts Exhibit 6 at 88). For example, Jeff Dingwell applied for a function manager position as a result of the August 31 posting. Although he was not the promoted to the first available opening, his successful September 27, 2001 telephone prescreen interview and subsequent in-person interview rendered him eligible for the function manager position he filled on February 21, 2002. See Reply at 4 (citing Deposition of Jeff Dingwell, Defendant Walgreens' Statement of Facts Exhibit 6 at 88-89).

Unlike Dingwell, Napoli did not progress beyond the telephone prescreen interview step of the selection process. She received a score that automatically disqualified her from

the function manager selection process. See Motion for Summary Judgment at 5 (citing Deposition of Kathleen Cawley ("Cawley Deposition"), Defendant Walgreens' Statement of Facts Exhibit 1 at 198). Napoli's score reflected the fact that she lacked relevant experience, enthusiasm, passion for leadership and willingness to take on new responsibilities. Id. at 198:24-202:17. In light of these explanations, we conclude that defendant's decision to give Napoli a failing score on her telephone prescreen interview, which rendered her ineligible for positions filled by those who had proceeded beyond the telephone test, was a legitimate, nondiscriminatory reason for its failure to promote Napoli to function manager in February 2002.

Plaintiff attempts to rebut defendant's articulated nondiscriminatory reasons in several ways. First, plaintiff alleges that Napoli was ineligible for the February 2002 function manager position Jeff Dingwell filled because Dingwell was promoted through a practice that departed from defendant's regular procedure. Response at 10. Plaintiff argues that defendant's function manager hiring process is unworthy of credence because the practice of awarding open but unposted positions to employees with applications already on file has a questionable origin, was never communicated to applicants, did not begin to run from a fixed date, and was never formally adopted as a policy. See id. at 10-11.

These attempts to characterize defendant's hiring process as pretextual are insufficient to survive summary judgment. Even if Dingwell was promoted through an irregular process, that fact does not render defendant's decision regarding Napoli discriminatory. The practice plaintiff attacks is one that promotes applicants who have *passed* the telephone screen interview. Therefore, whether that practice was inconsistently applied or poorly communicated is immaterial. The only decision that disqualified Napoli from the February 2002 promotion was her telephone prescreen score.

Next, plaintiff argues that defendant's nondiscriminatory reasons are pretextual because a "crucial question of material fact relating to Dingwell's selection is whether or not . . . the final decision-maker with regard to promotions . . . knew prior to promoting Dingwell in February 2002 that Napoli had also applied for the position." Response at 11. Plaintiff

contends, without citation to any document in the record, that Will Duncan, the final decision-maker, knew that Napoli wanted to be considered for the position that was filled by Dingwell. Id. at 12. Plaintiff's unsupported allegations do not give us reason to deny defendant's summary judgment motion, and we will not create factual disputes where there are none. In fact, even if Duncan's knowledge of Napoli's interest in the position was disputed, we would not change our conclusion. Defendant could not consider Napoli for the position that went to Dingwell because only applicants previously successful in telephone prescreen interviews and in-person interviews were eligible for unposted positions. Defendant had no obligation to alter its nondiscriminatory practice in order to accommodate an unqualified applicant.

Plaintiff also contends that defendant's witnesses' testimony regarding the fact that only applicants who received a passing score moved on to in-person interviews is unworthy of credence because it is contradicted by other testimony. See Response at 12. In so alleging, plaintiff argues that defendant's recruiting coordinator testified that function managers applicants could proceed to the in-person interview stage of the selection process, "regardless of their phone scores," and that the recruiter "in fact is sure that that has occurred." Id. Plaintiff provides no citation to the record in support of this allegation, but nevertheless suggests that the recruiter's testimony renders summary judgment inappropriate because a material fact is in dispute. Id.

Defendant's reply provides direct citation to the testimony at issue. See Reply at 5. When asked whether a candidate who failed a telephone prescreen interview could proceed to an in-person interview panel, defendant's recruiting coordinator stated that such a scenario was possible. However, the recruiter also testified that although such a practice was conceivable, "it did not take place in Flagstaff . . . it hasn't taken place . . . I have no evidence that it's taken place." Reply at 5 (citing Cawley Deposition, Defendant Walgreens' Statement of Facts Exhibit 1 at 238:4-21). Plaintiff has offered no evidence that renders defendant's articulated nondiscriminatory practice of interviewing in person only those applicants who passed the telephone interview unworthy of credence. Plaintiff's attempt to create a disputed

material fact where there is none is unpersuasive, and is insufficient to avoid summary judgment.

Finally, plaintiff argues that defendant's decision to promote Dingwell over Napoli is probative of pretext because Dingwell was not the best person for the job. Response at 12. In so arguing, plaintiff states that Napoli was the better candidate because at the time of her interview she had worked for defendant longer than Dingwell, received performance commendations and had a stellar attendance record, whereas Dingwell's attendance problems were documented in numerous employee incident reports. Id. None of these allegations are supported with citations to the record.

"Facts tending to show that the chosen applicant may not have been the best person for the job" are probative of pretext because they suggest that an employer's explanation is not the real reason for choosing one applicant over another. Godwin, 150 F.3d at 1222. However, although plaintiff may argue pretext by alleging that the best person for a job was not chosen, it may not criticize defendant's employment decision by suggesting that according to alternative criteria of its own invention, the best person was not selected. Title VII does not create a code of employment criteria, and we will defer to an employer's characterization of job criteria so long as it is reasonable and nondiscriminatory. Casillas v. U.S. Navy, 735 F.2d 338, 344 (9th Cir. 1984). Dingwell moved beyond the telephone prescreen interview because he received a passing score, whereas Napoli did not proceed because she failed the same interview. Defendant has proffered numerous unchallenged nondiscriminatory reasons for Napoli's failing score. The decision to give Napoli a failing score was neither illegitimate nor arbitrary, and we therefore also reject this rebuttal argument.

2.

Defendant next moves for summary judgment on plaintiff's Title VII sex discrimination claim based on its failure to promote Napoli to the position of function manager in July 2002. See Motion for Summary Judgment at 11. Defendant alleges that Napoli's failure to secure promotion in July 2002 was the result of a nondiscriminatory

selection process. To fill the July 2002 position, defendant first posted an advertisement stating that a function manager position was open. See September 27, 2006 Deposition of Will Duncan, Defendant Walgreens' Statement of Facts Exhibit 2 at 38-39. On April 8, 2002, Napoli applied for the opening, received a passing score on a telephone prescreen interview, and was referred to local management for an in-person interview. See Motion for Summary Judgment at 6 (citing Cawley Deposition at 216). On May 29, 2002, Napoli was interviewed in person by a three-member panel. See September 27, 2006 Deposition of Will Duncan, Defendant Walgreens' Statement of Facts Exhibit 2 at 119.

A candidate's in-person interview score was the determinative factor in defendant's 2001-2002 function manager selection process. See Deposition of Pamela J. Williamson, Defendant Walgreens' Statement of Facts Exhibit 5 at 236. Juan Alfaro, who was promoted to function manager in July 2002, received a score of 82 at his in-person interview. See id. at 92. Napoli received a score of 69.5. See Motion for Summary Judgment at 12 (citing Laura Napoli Manager Interview Questions, Defendant Walgreens' Statement of Facts Exhibit 16). Napoli's lower score was in part based on her response to a question regarding her supervisor, for which she received zero out of a possible four points. See September 27, 2006 Deposition of Will Duncan, Defendant Walgreens' Statement of Facts Exhibit 2 at 123. Specifically, Napoli described how she manipulated a manager in order to accomplish a desired goal. Id. The panel deemed this tactic unacceptable. Id. We conclude that defendant's articulated explanation of why it gave Napoli a low score on her in-person interview, which rendered her ineligible for the July 2002 function manager opening, was a nondiscriminatory reason for its employment decision.

Plaintiff challenges defendant's proffered nondiscriminatory reason on several grounds. First, it argues that defendant's in-person interview scoring method was inherently subjective and therefore constitutes evidence of pretext. See Response at 13-14. In particular, plaintiff contends that because the in-person interview panel scored each interviewee as a group, and not by averaging each panel member's individual score, the practice was inherently subjective. Id. at 13. Further, plaintiff compares Napoli's in-person

interview scores to those of Jeff Dingwell to present "two specific examples of the subjective nature of the scoring." Id. However, in so arguing, plaintiff labels certain employment decisions as subjective, but goes no further. Title VII does not prohibit the use of subjective employment criteria, and the mere use of such criteria has no talismanic significance. See Casillas, 735 F.2d at 345. So long as employment criteria, including interview scoring methods, are nondiscriminatory, they do not violate Title VII. Plaintiff does not present any direct or circumstancial evidence that defendant's subjective criteria are in fact discriminatory, and we therefore reject this argument.

Next, plaintiff argues that the fact that Alfaro was chosen over Napoli for the July 2002 position is evidence of pretext because Alfaro was "clearly less qualified." See Response at 14. As discussed above, the fact that a chosen applicant was not the most qualified applicant is probative of pretext. However, in so arguing, plaintiff may not invent its own job criteria and determine that based on that criteria, the most qualified person was overlooked. Here, the stated criteria for promotion to function manager in July 2002 was the in-person interview score. Plaintiff does not contend that based on Napoli's score, she was in fact a better candidate than Alfaro, who filled the July 2002 position. Rather, it argues that Napoli was the best person for the job because she worked for defendant thirteen years longer than Alfaro, had greater experience in relevant areas, and was not counseled, as Alfaro was, for attendance problems. See id. The criteria plaintiff relies upon to argue that the best person was overlooked are not the relevant criteria that determined which applicant was promoted. Because defendant's criteria are reasonable and nondiscriminatory, plaintiff's argument is insufficient to rebut the stated nondiscriminatory reason for the decision to give Napoli a low in-person interview score.

Next, plaintiff argues that defendant's "shifting reasons" for its concern regarding Napoli's "people" skills are evidence of pretext. See Response at 14. An employer's proffered nondiscriminatory reasons are unreliable when evidence in the record provides inconsistent, or shifting, reasons. See Godwin, 150 F.3d at 1222. However, labeling otherwise consistent explanations for employment decisions "shifting" does not convert them

into evidence of pretext. In support of its shifting reasons allegation, plaintiff argues that defendant's reasons for giving Napoli a low score during her in-person interview are suspect. Response at 14-15. Plaintiff contends that the interview scoring sheet, and the testimony of the panel members who conducted the interview, suggest that Napoli's description of her interaction with a supervisor was a factor that affected her score. Response at 14-15. However, plaintiff alleges that when Napoli was debriefed about her in-person interview, the explanation given for Napoli's score changed. There, plaintiff argues, Napoli's interactions with co-workers were mentioned as the reason for her failure to be promoted. Id. Yet according to plaintiff's description, the explanation given for Napoli's in-person interview score did not shift. Rather, both of the explanations plaintiff highlights speak to Napoli's unacceptable interaction with co-workers. Therefore, we reject this rebuttal argument.

Plaintiff also contends that the subjects discussed during Napoli's debriefing constitute evidence of pretext because they suggest that an interview panel member's "adamant" testimony that only an applicant's in-person interview score affected promotion decisions was inaccurate. See Response at 91. But in arguing that defendant's proffered explanations are unbelievable, plaintiff does not cite to *any* evidence that defendant's debriefing contradicted defendant's explanation that the in-person interview determined the in-person interview score. Rather, in support of this argument, plaintiff cites to its statement of facts as a whole, and to a deposition that contradicts, rather than supports, its inconsistency allegation. See Response at 15 (citing "PSOF," but nothing more); id. at 15 n.6 (citing "Viano Dep. 31:20-32:6").[5] Therefore, we also conclude that this argument fails to rebut defendant's proffered nondiscriminatory explanation.

---

[5] Viano testified that he heard information about Napoli from others "in the building," but does not state that that information informed his scoring of Napoli's in-person interview. See Deposition of Joseph Viano, Plaintiff EEOC's Statement of Undisputed Facts Exhibit J at 32. Rather, Viano stated that Napoli's interview *performance*, which determined her interview score, reflected that she had a problem with people skills. Id.

- 11 -

Finally, plaintiff argues that defendant's stated nondiscriminatory reason to not promote Napoli in July 2002 was pretextual because defendant's "explanation of why Napoli was finally promoted in October 2002 is not worthy of credence." See Response at 15. Without any citation to the record, plaintiff contends that although defendant proffers that Napoli was promoted to function manager in October 2002 because she "attended a three-day seminar . . . on conflict skills," she was actually promoted because on August 5, 2002, she filed a charge with the EEOC, and informed defendant of her filing. See Response at 15 (citing "DMSJ? PSOF of Duncan dep [sic]"). However, this argument merely speculates as to why Napoli was eventually promoted. In so arguing, plaintiff does not contend that defendant presented inconsistent reasons for its July 2002 decision, nor does it present any evidence that defendant's stated reason for its in-person interview score was pretextual. Simply stating that a promotion "begs credulity," see id., sheds no light on a previous decision to not promote. Therefore, we also reject this rebuttal argument.

B.

Defendant moves for summary judgment on Napoli's Equal Pay Act claim, arguing that any discrepancy in pay between Napoli and male function managers is due to the fact that function managers are paid based on the length of time they have spent as function managers. See Motion for Summary Judgment at 14.[6]

The Equal Pay Act ("EPA") requires that employees doing equal work "be paid equal wages, regardless of sex." EEOC v. Maricopa County Cmty. Coll. Dist., 736 F.2d 510, 513 (9th Cir. 1984). A plaintiff establishes a prima facie EPA violation by showing that the

---

[6] Plaintiff labels the male comparators for Napoli's EPA claim as both "Function Managers" and "Function Leaders," but highlights the pay differential between Napoli's function manager pay, and the pay received by three male function managers. See Response at 17. Therefore, we look to the pay differential among function managers. Defendant uses a different term to refer to the position Napoli was promoted to in October 2002. Acknowledging that witnesses in this case use the titles "Function Manager" and "Supervisor" interchangeably, defendant describes what plaintiff labels "Function Manager" as "Supervisor/Function Manager." Motion for Summary Judgment at 3 n.2. For clarity's sake, we refer to the position Napoli entered in October 2002 as "function manager."

employer "pays different wages to employees of the opposite sex for substantially equal work." Id. However, the EPA does not prohibit employers from using "bona fide gender-neutral job evaluation and classification systems." Maricopa County Cmty. Coll. Dist., 736 F.2d at 514. Therefore, a defendant may rebut plaintiff's prima facie case by showing that a pay differential is the result of a factor other than sex; that is, "a nondiscriminatory reason." Stanley v. Univ. of So. Cal., 178 F.3d 1069, 1075 (9th Cir. 1999). If a defendant meets this burden, a plaintiff may avoid summary judgment by demonstrating the existence of a material fact regarding whether an employer's proffered nondiscriminatory reason is a pretext for discrimination. Id. at 1076. However, unsupported allegations that an employee and her male comparators have comparable experience will not defeat a motion for summary judgment. Id.

Plaintiff alleges an EPA violation because Napoli, a function manager as of October 2002, was paid less than her male comparators. In particular, plaintiff contends that in October 2002, Napoli's salary was $46,800, whereas the salaries of male function managers Jeff Dingwell and Steve Anderson in October 2002 were $46,892 and $51,216, respectively. See Response at 17 (citing Laura M. Napoli's Declaration in Support of Response to Defendant's Motion for Summary Judgment ("Napoli Declaration"), Plaintiff EEOC's Statement of Undisputed Facts Exhibit B; Salary Record of Jeff Dingwell, Plaintiff EEOC's Statement of Undisputed Facts Exhibit AA; Salary Record of Steve Anderson, Plaintiff EEOC's Statement of Undisputed Facts Exhibit BB). This disparity continued, plaintiff argues, through 2004, when Napoli earned $55,200, but Anderson earned $63,048, Dingwell earned $56,862, and Juan Alfaro earned $58,320. Id. As of July 2005, plaintiff contends that Napoli earned $66,000, Anderson earned $68,666, and Dingwell earned $67,068. Id.

We need not decide whether plaintiff has raised a genuine issue of fact as to its prima facie case. Instead, we turn to defendant's proffered nondiscriminatory reason for the pay

- 13 -

differential between Napoli and her male comparators.[7]  Defendant argues that the pay differential is the result of the fact that each of Napoli's male comparators were promoted to the position of function manager before Napoli, and as a result received pay that reflects the length of time they have spent as function managers.  The record supports this argument. Napoli was promoted to function manager on October 17, 2002.  See Napoli Declaration, Plaintiff EEOC's Statement of Undisputed Facts Exhibit B.  Jeff Dingwell was promoted to function manager on February 21, 2002.  See Salary Record of Jeff Dingwell, Plaintiff EEOC's Statement of Undisputed Facts Exhibit AA.  Juan Alfaro was promoted to function manager on July 25, 2002.  See Salary Record of Juan Alfaro, Plaintiff EEOC's Statement of Undisputed Facts Exhibit Z.  Steve Anderson was promoted to function manager on November 2, 2000.  See Salary Record of Steve Anderson, Plaintiff EEOC's Statement of Undisputed Facts Exhibit BB.  As a result, we conclude that defendant has proffered a factor other than sex to explain the pay disparity between Napoli and the function managers she identifies as her male comparators.

Plaintiff argues the pay differential violates the EPA because it results in higher wages for function managers who have "less years of service with Defendant" than Napoli.  See Response at 17.  In so arguing, plaintiff contends that defendant's pay system is discriminatory because it pays according to years spent as a function manager, but not years spent working for defendant.  We reject this argument because plaintiff cannot defeat a defendant's nondiscriminatory pay differential system by proposing its own compensation system that pays according to criteria that *plaintiff* considers relevant.

Employers are permitted to create variations in wages so long as the variations are not discriminatory.  Hein v. Oregon Coll. of Educ., 718 F.2d 910, 916 (9th Cir. 1983).  Pay

---

[7] Defendant contends that only one of the three male function managers identified by plaintiff are in fact suitable male comparators.  See Reply at 9.  However, we need not decide the issue because we conclude that the pay differential between Napoli and each male comparator plaintiff identifies is justified by a nondiscriminatory reason devoid of pretext.

differences explained by disparate levels of *relevant* experience and qualifications constitute the sort of nondiscriminatory reason sufficient to rebut a prima facie case. Stanley, 178 F.3d at 1077. Defendant has identified years an employee has spent working as function manager as the kind of relevant experience that justifies a pay differential. Plaintiff cannot rebut this nondiscriminatory classification system by proffering its own system, that would compensate employees based on the length of time spent as defendant's employee, regardless of the nature of the work an employee previously performed.[8] We grant defendant's motion for summary judgment on this issue because plaintiff fails to rebut defendant's affirmative defense with any sort of pretext evidence.

C.

Finally, because we grant defendant's motion for summary judgment as to each claim, we necessarily conclude that defendant is also entitled to summary judgment on the punitive damages claims asserted in both complaints.

Therefore, it is **ORDERED GRANTING** defendant's motion for summary judgment (doc. 87).

DATED this 26th day of March, 2007.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge

---

[8] Plaintiff similarly argues that defendant's compensation system violates the EPA because Napoli's manager "told Napoli that she is underpaid for her position." Response at 17. Yet this statement does not rebut defendant's proffered nondiscriminatory explanation for its pay differential. Rather, it suggests that Napoli's manager, like plaintiff, believes that function manager compensation should not be based on the number of years spent working as a function manager, but rather on some sort of system that rewards employees like Napoli who have spent many years working for defendant in various capacities. For the reasons stated above, suggesting compensation systems based on criteria that differ from defendant's nondiscriminatory criteria is not the sort of argument sufficient to survive summary judgment.